**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Clinton "Pete" Stroklund and Rebecca "Becky" Stroklund, | ) ) ) | **ORDER DENYING DEFENDANT THOMPSON/CENTER ARMS COMPANY'S MOTION FOR SUMMARY JUDGMENT, IN PART** |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:06-cv-08 |
| Thompson/Center Arms Company, Inc., Blackpowder Shooting Sports, Inc., and Clean Shot Technologies, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

Before the Court is defendant Thompson/Center Arms Company's Motion for Summary Judgment filed on June 15, 2007. The plaintiffs filed a response in opposition to the motion on July 20, 2007, and Thompson/Center Arms filed a reply brief on July 27, 2007. For the following reasons, the Defendant's motion is denied in part.

I.     **BACKGROUND OF THE CASE**

This dispute arises out of an explosion of a muzzleloader rifle on December 4, 2004. The explosion caused injuries to the left hand of the plaintiff, Clinton "Pete" Stroklund. Those injuries resulted in the amputation of the hand. On February 2, 2006, Pete Stroklund and Rebecca "Becky" Stroklund filed a lawsuit alleging four claims against Thompson/Center Arms Company, Inc., as well as against the manufacturers of the bullet and the gunpowder used by Pete Stroklund. The claims asserted against Thompson/Center Arms are: (1) negligence; (2) strict products liability; (2) failure to warn; and (3) breach of express and implied warranties.

The parties agree that the following facts are not in dispute.  In April of 2002, Pete Stroklund received a .54 caliber muzzleloader rifle for his birthday.  Although there is a dispute as to whether the barrel of the muzzleloader rifle was manufactured by Thompson/Center Arms, it is undisputed that the rifle Pete Stroklund received was a used .54 caliber Renegade model blackpowder muzzleloader manufactured by Thompson/Center Arms and purchased at Scheels Sports in Minot, North Dakota.  From the time he received the muzzleloader as a gift until the day of the accident, Pete Stroklund estimated that he had shot the rifle more than thirty (30) times without incident and that he had always used 348-grain copper plated aerotip PowerBelt brand bullets designed and manufactured by Blackpowder Shooting Sports.

On December 3, 2004, Pete Stroklund went hunting for deer and loaded the muzzleloader with powder manufactured by defendant Clean Shot Technologies, Inc., and with one 348-grain copper plated aerotip Powerbelt bullet.  Stroklund shot a deer and then reloaded the muzzleloader in case he had to fire a second shot.  However, he did not fire a second shot that day.  Stroklund did not unload the muzzleloader that evening, but instead placed the loaded rifle in his truck where it remained overnight.  On December 4, 2004, the barrel of the muzzleloader rifle exploded when Stroklund discharged the rifle into an open field to unload it.

The Stroklunds' expert witness, Charles Powell, examined and analyzed fractured components of the muzzleloader rifle that were recovered from scene of the accident.  See SSEC Engineering Report of Charles Powell, Docket No. 121-2, p. 2.  Powell compared numerous features of the barrel fragments recovered from the accident scene with other barrels manufactured by Thompson/Center Arms.  Powell opined that the fragments were from a Renegade muzzleloader rifle barrel that was designed and manufactured by Thompson/Center Arms.  Id. at 3.  Powell opined that

2

the explosion was created by high pressure within the barrel when the rifle was fired, and that the high pressure was created by combined defects in the rifle barrel, the PowerBelt bullet, and the Clean Shot powder.  Id. at 4.  Thompson/Center Arms seeks summary judgment as to all claims

II.     **STANDARD OF REVIEW**

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999).  A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996).  The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact.  If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings.  Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial.  Fed. R. Civ. P. 56(e).  A mere trace of evidence supporting the non-movant's position is insufficient.  Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party.  Anderson, 477 U.S. at 252.

III.    **LEGAL DISCUSSION**

This action is based on diversity jurisdiction and the Court will apply the substantive law of North Dakota.  Paracelsus Healthcare Corp. v. Philips Med. Sys., 384 F.3d 492, 495 (8th Cir. 2004).

A.      **NEGLIGENCE AND STRICT LIABILITY CLAIMS**

Thompson/Center Arms contends that there are numerous reasons why the Stroklunds' product liability claims should be dismissed.  Thompson/Center Arms contends that the Stroklunds cannot establish causation because they cannot show that the rifle barrel was manufactured by Thompson/Center Arms, that the use of a bullet and powder manufactured after the date the rifle was manufactured was not foreseeable, and that the explosion was too remote in time from the date the rifle was manufactured.

The North Dakota Supreme Court has recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus.  Oanes v. Westigo, Inc., 476 N.W.2d 248, 253 (N.D. 1991) (citing Butz v. Werner, 438 N.W.2d 509 (N.D. 1989); Mauch v. Mfrs. Sales & Serv., Inc., 345 N.W.2d 338 (N.D. 1984); Day v. General Motors Corp., 345 N.W.2d 349 (N.D. 1984)).  Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's conduct falls below the standard of reasonable care.  Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 406 (N.D. 1994).  Under either theory, the plaintiff has the burden of demonstrating causation.  See Investors Real Estate Trust Properties, Inc. v. Terra Pacific Midwest, Inc., 686 N.W.2d 140, 144 (N.D. 2004) (holding that in any negligence action the plaintiff has the burden of demonstrating (1) a duty, (2) a breach of that duty, (3) causation, and (4) damages); Enderson v.

Scheels Hardware and Sports Shop, Inc., 560 N.W.2d 225, 228 (N.D. 1997) (citing Kaufman v. Meditec, Inc., N.W.2d 297, 300 (N.D. 1984)) (holding that in order to recover for injuries sustained as a result of a defective condition in a product unreasonably dangerous to a consumer, the plaintiff must show by a preponderance of the evidence that (1) the product was defective in design or manufacture; (2) the defect rendered the product unreasonably dangerous to the consumer; (3) the defect existed when the product left the manufacturer; and (4) the defect was a proximate cause of the plaintiff's injuries) (emphasis added). It is well-established that negligence actions are ordinarily inappropriate for summary judgment. Gullickson v. Torkelson Bros., Inc., 598 N.W.2d 503 (N.D. 1999).

Thompson/Center Arms contends that the Stroklunds are unable to identify Thompson/Center Arms as the manufacturer of the barrel that exploded in Pete Stroklund's muzzleloader rifle. Thompson/Center Arms contends that, after the accident, not all of the rifle barrel pieces were located and there was no piece of the barrel recovered containing the name Thompson/Center Arms or the barrel caliber of .54. The Stroklunds' engineering expert, Charles Powell, examined the barrel dimensions of the exploded barrel and compared those dimensions to three Thompson/Center Arms engineering drawings for muzzleloader barrels, and to three exemplar Thompson/Center Arms Renegade rifle barrels. Powell also compared the chemistry and hardness of the barrels. Powell opined that Pete Stroklund's rifle barrel was manufactured by Thompson/Center Arms and that Stroklund's barrel contained a manufacturing defect in that the bore diameter was undersized and the hardness level exceeded the specified range. See SSEC Engineering Report of Charles Powell, Docket No. 121-2, pp. 3-6, 9-11.

5

In addition to Powell's expert opinion as to the manufacturer of the gun, the remnants of Pete Stroklund's exploded barrel contained a serial number. A representative and long-time employee from Thompson/Center Arms, Mark Laney, identified those remnants based on the appearance of the fragments recovered as well as the serial number and stated that they belonged to a Renegade rifle made in approximately 1976. See Deposition of Mark Laney, Docket No. 124-2, p. 18.

Thompson/Center Arms contends that the differences in barrel hardness and bore diameter on Stroklund's exploded rifle barrel and the exemplar Thompson/Center barrels and specifications, indicate that the exploded barrel was not manufactured by Thompson/Center Arms. Having viewed the facts in a light most favorable to the plaintiffs, including the expert opinion of Charles Powell based on his detailed examination of the remnants of Pete Stroklund's exploded muzzleloader barrel, and the presence of the serial number, the Court concludes that there exist genuine issues of material fact as to who manufactured the barrel on Pete Stroklund's gun.

Thompson/Center Arms also contends that the Stroklunds have failed to carry their burden of proof as to proximate cause because Thompson/Center could not have foreseen the use of a bullet and powder that were manufactured after the date the Renegade muzzleloader rifle was manufactured. The Stroklunds contend that the failure of the rifle was, in part, caused by defects in the rifle barrel which created an inability of the rifle barrel to withstand normal pressures. The Stroklunds argue that the pressure that caused the failure in Pete Stroklund's muzzleloader rifle can be generated by conventional bullet and powder combinations that were available at the time the rifle was manufactured by Thompson/Center Arms.

It is clear that expert witness Charles Powell opined that the failure of Stroklund's barrel was caused by excessive pressure created by the combination of defects in the rifle barrel, defects in the

6

bullet, and defects in the gunpowder.  <u>See</u> SSEC Engineering Report, Docket No. 121-2. Specifically, Powell opined that the barrel was defective because it was constructed of steel that was too brittle and had a smaller bore diameter than required by the specifications.  <u>Id.</u> pp. 3-6.  The Court finds that the Stroklunds have provided sufficient evidence at this stage to create a genuine issue of material fact regarding whether the defective barrel would fail under pressures created by firing the rifle with bullets and gunpowder available at the time the rifle was manufactured. Causation is generally a question for the trier of fact to resolve unless the evidence is such that only one inference can be drawn from the facts.  The Court is unwilling to usurp the role of the jury in this case in determining foreseeability and causation.

Finally, Thompson/Center Arms contends that the Stroklunds have failed to establish proximate cause because the failure of the rifle was too remote from the time the rifle was manufactured.  Based on the testimony of a Thompson/Center Arms employee, the Stroklunds contend that a muzzleloader rifle has the capability to last several lifetimes.  <u>See</u> Deposition of Mark Laney, Docket No. 124-3, p. 97.  The Court finds that the plaintiffs have created genuine issues of material fact that warrant a trial on these issues.

Thompson/Center Arms also contends that the Stroklund' products liability claim should be dismissed because they have failed to show that a defective condition existed when the rifle left the manufacturer.  Thompson/Center Arms contends that the rifle barrel was not defective at the time it was manufactured because the only defective condition was the combination of the rifle barrel, the bullet, and the gunpowder used by Pete Stroklund.

The record is clear that engineering expert Charles Powell opined that Pete Stroklund's rifle barrel was manufactured by Thompson/Center Arms, and that there were both design and

manufacturing defects with the barrel that necessarily must have existed at the time the barrel was manufactured. Powell opined that the specific design defect was that Thompson/Center Arms specified a grade of steel denoted as AISI 1137 for making the Renegade muzzleloader barrels, and that type of steel is insufficient to withstand the pressures created in a rifle barrel. See Docket No. 121-2, p. 5. Powell opined that Pete Stroklund's muzzleloader rifle barrel did not satisfy the hardness requirements of AISI 1137 steel and the bore of the rifle barrel was undersized which also represents a manufacturing defect. Based upon these expert opinions, when coupled with Powell's opinion that Stroklund's rifle barrel was manufactured by Thompson/Center Arms, a jury could reasonably conclude that the defects existed at the time the rifle barrel was manufactured. The Court finds that the opinions proffered by Powell that the rifle barrel had design and manufacturing defects, and that the rifle was originally manufactured by Thompson/Center Arms, create genuine issues of material fact as to whether the defective condition existed at the time the muzzleloader rifle was manufactured.

When the evidence is viewed in a light most favorable to the non-moving party (the Stroklunds), the Court finds that there are genuine issues of material fact as to the claims of product liability based on negligence and strict liability and that there are genuine issues of material fact which preclude the granting of summary judgment.


**B.**     **FAILURE TO WARN**

Thompson/Center Arms argues that the Stroklunds have only alleged a claim for failure to warn in negligence and that the claim should be dismissed for lack of expert testimony and for failure to establish proximate cause. The amended complaint provides as follows:

> The Defendant, Thompson, was negligent, reckless and/or careless in the design, manufacture, assembly, testing and/or sale of the .54 caliber rifle used by Pete Stroklund on December 4, 2004, in one or more of the following manners:
>
> > ***
>
> > d. Inadequate warnings, instructions, directions and cautions; and,
>
> > e. Other acts of negligence to be proven at trial.

See Amended Complaint, Docket No. 23, p. 4, ¶ XVIII (emphasis added). The amended complaint contains a separate paragraph alleging a cause of action for strict products liability which provides:

> The .54 caliber Thompson rifle was sold as a finished, assembled product that was unreasonably dangerous and defective at the time it was designed, manufactured, assembled and/or initially sold by the Defendant, Thompson. The .54 caliber Thompson rifle reached Pete Stroklund without substantial change or modification of the unreasonably and defective condition which existed at the time of the initial sale by the Defendant, Thompson, and accordingly, Thompson is strictly liable in product liability for the damages suffered by the Stroklunds.

See Amended Complaint, Docket No. 23, p. 4, ¶ XVII.

The North Dakota Supreme Court has recognized a cause of action for negligent failure to warn which encompasses a post-sale duty to warn. Collette v. Clausen, 667 N.W.2d 617, 624 (N.D. 2003); Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 407 (N.D. 1994). A post-sale duty to warn arises "if, subsequent to the sale of the product, manufacturers become aware of dangerous conditions associated with the use of the product." 521 N.W.2d at 407. While the existence of a duty to warn is generally a preliminary question of law for the court, if the existence of a duty depends upon factual determinations, their resolution is for the trier of fact. Butz v. Werner, 438 N.W.2d 509, 511 (N.D. 1989).

Thompson/Center Arms argues that summary judgment is appropriate on the claim of negligent failure to warn because Stroklund never received the instruction or owner's manual for

the Renegade muzzleloader, never attempted to obtain a manual, and never read any manual.  See

Deposition of Pete Stroklund, Docket No. 124, pp. 203-204.  Thompson/Center Arms contends that

the Stroklunds have not provided any expert testimony to substantiate a claim of negligent failure

to warn, and that the Stroklunds' expert witness has not offered any opinions on the failure to warn

claims.  Thompson/Center Arms cites to Charles Powell's deposition:

> Q.     Are you offering any opinions in this case with respect to the warnings that Mr.
>        Stroklund testified he never read.
>
> A.     No.

See Deposition of Charles Powell, Docket No. 131, pp. 115-116.

    The record is clear that Pete Stroklund never read an instruction or owner's manual on the

Renegade muzzleloader, nor did the Stroklund's expert wtiness opine on the warnings that were

contained in the muzzleloader manual.  However, the Stroklunds do not contest the adequacy of the

warnings contained in the muzzleloader manual.  Rather, they both contend that Thompson/Center

Arms was aware of numerous barrel failures of both Renegade and Hawken muzzleloader rifles[1] that

had occurred after the muzzleloaders were sold, and that Thompson/Center Arms failed to warn

consumers of those barrel failures.

    Thompson/Center Arms cites to  Dancy v. Hyster Co., 127 F.3d 649 (8th Cir. 1997) for the

proposition that expert testimony is required to establish and support a claim of inadequate warning.

In Dancy, the trial court excluded testimony of the plaintiff's expert witness, and granted summary

judgment to the defendant based on the lack of expert testimony.  The Eighth Circuit Court of

---

    [1] Pete Stroklund's gun was a Renegade model Thompson/Center Arms muzzleloader.  The Renegade
model and the Hawken model barrels are made of identical material and made the same way.  The only difference
between the Renegade model and the Hawken model is caliber that was offered and the length of the barrel - the
Renegade is 26 inches long and the Hawken is 28 inches long.  See Deposition of Michael Garland, Docket No. 123,
p. 14.

Appeals affirmed the trial court and stated that expert testimony was necessary to support the plaintiff's negligence claim because, without expert testimony, there was no basis for the jury to evaluate the actions of a reasonable and prudent person in the same situation as the company that designed the allegedly defective product.  Id. at 654.  In this case, the Stroklunds have provided two sources of evidence to support their claims that Thompson/Center Arms had a duty to warn, namely the testimony of Ken French and expert witness Charles Powell.

In support of their claim that there was a post-sale duty to warn, the Stroklunds cite to the deposition testimony of Ken French, the Director of Research and Development at Thompson/Center Arms until 2006.  French said that he has testified in as many as fifteen cases, many of which involved Renegade and Hawken muzzleloaders.  See Deposition of Ken French, Docket No. 121-4, pp. 108-114.  French testified as follows:

> Q.    So the majority of the ten to fifteen taken (sic) cases that you've testified in involving Hawkens and Renegades have been burst barrel cases?
>
> A.    Probably true.

See Deposition of Ken French, Docket No. 121-4, p. 115.  Along with Charles Powell's opinion that the rifle barrel was defective as manufactured, Stroklund's expert has opined that "the significantly high number of barrel failures . . . should have warranted documented extensive engineering testing and research.  Reportedly this was not done."  See SSEC Engineering Report of Charles Powell, Docket No. 164-9, p. 10.  The Court finds that Charles Powell's opinion regarding the specific defects in the rifle barrel, combined with Powell's opinion that the previous barrel failures should have triggered additional engineering testing and research, are sufficient at this stage to support a claim for post-sale failure to warn and satisfy the expert testimony requirements as set forth in

<u>Dancy</u>.  At a minimum, when such evidence is viewed in a light most favorable to the Stroklunds, it creates genuine issues of material fact that require submission to a jury.

Finally, Thompson/Center Arms contends that the Stroklunds have not established that any of the past burst barrel cases testified to by Ken French were substantially similar to the muzzleloader used by Stroklund.  French testified that the burst barrel failures occurred in the Renegade and Hawken model muzzleloader rifles, and the record supports a finding that the Hawken barrel is identical to the Renegade barrel except for barrel length and possibly the caliber of the bore. Viewing the evidence in a light most favorable to the Stroklunds, including the existence of several burst barrel cases in rifle barrels of identical manufacture to the barrel used in this case, the Court finds that the evidence is sufficient at this stage to create a genuine issue of material fact as to the existence of a post-sale duty to warn by Thompson/Center Arms.

### C.       **BREACH OF WARRANTY**

In addition to the products liability and failure to warn claims, the Stroklunds have alleged breach of warranty claims based on express and implied warranties.  <u>See</u> Docket No. 23, pp. 4-5.

### 1.       **EXPRESS WARRANTY**

Section 41-02-30 of the North Dakota Century Code provides the requirements for the creation of an express warranty:

1. Express warranties by the seller are created as follows:

a. Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes <u>part of the basis of the bargain</u> creates an express warranty that the goods shall conform to the affirmation or promise.

12

> b. Any description of the goods which is made <u>part of the basis of the bargain</u> creates an express warranty that the goods shall conform to the description.
>
> c. Any sample or model which is made <u>part of the basis of the bargain</u> creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> 2. It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

(emphasis added). It is clear from this statute, as well as North Dakota case law, that in order to create an express warranty, a statement, description, or product sample must form part of the basis of the bargain. <u>See</u> <u>Leininger v. Sola</u>, 314 N.W.2d 39, 44 (N.D. 1981). It is well-settled that the question of whether an express warranty has been given is generally a question of fact for the jury. <u>Scientific Application, Inc. v. Delkamp</u>, 303 N.W.2d 71, 74 (N.D. 1981).

The Stroklunds do not argue that Pete Stroklund or Becky Stroklund received an express warranty at the time of the purchase of the muzzleloader rifle in 2002. Rather, the Stroklunds argue that the original purchaser of the muzzleloader rifle received an express warranty, and that the express warranty provided to the original purchaser extends to the Stroklunds through the extension of warranties to third party beneficiaries. <u>See</u> N.D.C.C. § 41-02-35. The Stroklunds contend that Thompson/Center Arms created an express warranty with the original purchaser because it represented in its advertising and marketing literature that it manufactured quality firearms that were backed by a "lifetime warranty." <u>See</u> Docket No. 123-4, p. 7.

The instruction manual that accompanied a new Thompson/Center Arms product provided several statements of warranty, including the following: "Thompson/Center Arms provides a warranty for all factory finished firearms for the LIFETIME OF THE ORIGINAL CONSUMER

13

PURCHASER."  See Docket No. 123-9, p. 12.  It is important to note that  Thompson/Center Arms has stated that it was the company's practice to extend and honor the warranty of the firearm to subsequent purchasers.  See Deposition of Michael Garland, Docket No. 123-2, p. 105.  Viewing the evidence in a light most favorable to the Stroklunds, the Court finds that the Stroklunds have presented sufficient evidence to create a genuine issue of material fact as to the existence of an express warranty made to the original purchaser of the muzzleloader rifle, and the extension of that express warranty to the Stroklunds.

The Stroklunds contend that Section 41-02-35 of the North Dakota Century Code extends the express warranty beyond the initial purchaser to include Pete Stroklund as a third party beneficiary.  Section 41-02-35 relates to third party beneficiaries of warranties and provides as follows:

> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

Id. (emphasis added).  Section 41-02-35 codifies Section 2-318 of the Uniform Commercial Code, and adopts the most expansive Uniform Commercial Code  provision for defining who may be held liable for express or implied warranties.  See White and Summers, Uniform Commercial Code § 11-5 (5th ed. 1996).  The plain language of the U.C.C. provision provides that the question of to whom an express or implied warranty extends is a question of "who may reasonably be expected to use, consume, or be affected by the goods," and as such is a question for the jury to resolve at trial. N.D.C.C. § 41-02-35.

14

A reasonable jury could find that the statements contained in the muzzleloader rifle's instruction manual were sufficient to create an express warranty, and a reasonable jury could find that the express warranty extended to the Stroklunds as a subsequent purchaser of the muzzleloader rifle.  The Court finds summary judgment on the claim of breach of express warranty is not warranted at this stage because there are genuine issues of material fact that exist.

## 2.   IMPLIED WARRANTY OF MERCHANTABILITY

Section 41-02-31 of the North Dakota Century Code sets forth the requirements of an implied warranty of merchantability:

1. Unless excluded or modified (section 41-02-33), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

2. Goods to be merchantable must be at least such as:

a. Pass without objection in the trade under the contract description;

b. In the case of fungible goods, are of fair average quality within the description;

c. Are fit for the ordinary purposes for which such goods are used;

d. Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

e. Are adequately contained, packaged, and labeled as the agreement may require; and

f. Conform to the promises or affirmations of fact made on the container or label if any.

3. Unless excluded or modified (section 41-02-33), other implied warranties may arise from course of dealing or usage of trade.

N.D.C.C. § 41-02-31 (emphasis added).

15

Thompson/Center Arms submits several arguments as to why an implied warranty of merchantability does not exist relative to Pete Stroklund's muzzleloader rifle. Thompson/Center Arms argues that Stroklund was not the first person to purchase the firearm, that the length of time between the manufacture of the rifle and its failure was too lengthy, and that it is impossible to determine if the muzzleloader rifle was misused between the date of its manufacture and the accident.

It is clear under North Dakota law that an implied warranty of merchantability is deemed to have been made unless excluded or modified. Scientific Application, Inc. v. Kelkamp, 303 N.W.2d 71, 74 (N.D. 1981). In other words, the law presumes that an implied warranty of merchantability has been given, unless excluded or modified. Thompson/Center Arms has presented no evidence of any effort on its part to exclude or modify an implied warranty of merchantability. Even if Thompson/Center Arms had presented evidence of such an exclusion or modification, "[w]hether or not such a warranty is excluded or modified is a question of fact for the jury." Id.

When the evidence is viewed in a light most favorable to the Stroklunds, the Court finds that there are genuine issues of material fact that require submission of this claim to a jury. Thompson/Center Arms' motion for summary judgment as to the claim for breach of implied warranty of merchantability is denied.

### 3.   IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

Section 41-02-32 of the North Dakota Century Code governs breach of implied warranty of fitness for a particular purpose and states as follows:

> If the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or

> judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.D.C.C. § 41-02-32 (emphasis added).

"In an action claiming breach of an implied warranty for fitness for a particular purpose, a product may be entirely free from defect but entirely unfit for the particular purpose that the purchaser intends to make of it." Coop. Power Ass'n, v. Westinghouse Elec. Corp., 60 F.3d 1336, 1345 (8th Cir. 1995). The Eighth Circuit Court of Appeals has analyzed a claim for breach of warranty of fitness for a particular purpose under North Dakota law and stated that, to be successful, a plaintiff must establish that the product was not simply defective but rather defective as to a particular purpose. Coop. Power Ass'n, v. Westinghouse Elec. Corp., 60 F.3d 1336, 1345 (8th Cir. 1995). The Eighth Circuit noted the official comment contained in the Uniform Commercial Code regarding the implied warranty of fitness for a particular purpose. The official comment provides:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id. at 1345 (citing U.C.C. § 2-315 cmt. 2 (1989)).

In Cooperative Power Association, v. Westinghouse Electric Corp., 60 F.3d 1336, 1349 (8th Cir. 1995), the plaintiff, Cooperative Power Association (CPA), alleged a breach of implied warranty of fitness for a particular purpose as to a transformer manufactured by defendant Westinghouse. The Eighth Circuit stated as follows:

> CPA has presented no evidence to indicate that the bushing cap problem would affect one particular purpose in using the transformer any differently than any other

17

> purpose. As the record indicates, the improperly tightened bushing caps and resulting transformer failure impeded all purposes for which the transformer could be used.... [I]f one defect rendered the transformer unsuitable for all purposes, then logically one cannot also claim it constituted a defect as to a particular purpose. To do so would render an implied warranty claim of fitness for a particular purpose meaningless.

Id. at 1345.

The Stroklunds essentially contend that the particular purpose intended for Pete Stroklund's muzzleloader rifle was to be loaded with powder and a bullet and to be safely fired. See Docket No. 121, p. 14. The Stroklunds do not allege any other purpose for the muzzleloader, nor do they allege that any representations were made by a seller of the rifle that were relied upon at the time of the purchase. The record reveals that Pete Stroklund selected the rifle because it looked like it was in good shape. See Deposition of Pete Stroklund, Docket No. 124, p. 49. Stroklund stated as follows:

> Q.    Were you dealing with any particular salesperson at Scheels when you were looking at this gun?
>
> A.    I don't think, no. I don't think a particular person, no.
>
> ***
>
> Q.    Did the salesperson that you were dealing with when you were looking at this gun, admiring this gun, ever talk to you about the gun, for example, tell you how old it was, how many times it had been fired, and so on?
>
> A.    No.

Id. at 49-50.

Although the question of whether an implied warranty of fitness for a particular purpose was provided is generally a question of fact, see Scientific Application, Inc. v. Kelkamp, 303 N.W.2d 71, 74 (N.D.1981), the Court finds that a reasonable jury could not find that an implied warranty of fitness for a particular purpose was provided by Thompson/Center Arms based on the undisputed

facts in the record.  The record is devoid of any evidence of reliance upon the seller's skill or judgment in selecting the particular Renegade muzzleloader rifle.  Further, even if the Stroklunds had established the requisite reliance on the seller's skill or judgment in selecting the Renegade muzzleloader rifle, they do not contend that a defect in the rifle rendered it incapable of performing for a particular purpose.  Instead, they argue that the defect rendered the muzzleloader completely unusable and unsuitable for all purposes.  In other words, the Stroklunds do not claim that the muzzleloader rifle was purchased because it was suitable for a particular and unique purpose.  To the contrary, the Stroklunds allege that the defects in the rifle and barrel impeded all purposes for which the rifle could be used.  As such, the Stroklunds' claim is appropriately pled as a claim for breach of implied warranty of merchantability rather than fitness for a particular purpose.  The Court finds, as a matter of law, that the plaintiffs have failed to establish a genuine issue of material fact as to the claim of breach of implied warranty of fitness for a particular purpose.


IV.    **CONCLUSION**

The Court finds that the Stroklunds have presented sufficient evidence at this stage that create genuine issues of material fact with regard to the claims of negligence and strict liability.  The Court finds that the opinions of the Plaintiffs' expert witness, Charles Powell, coupled with several past failures of similar muzzleloader rifle barrels, are sufficient to create genuine issues of material fact as to a post-sale duty to warn under North Dakota law.  The Court further finds that there are genuine issues of material fact which exist with respect to the Stroklunds' claims of breach of express warranty and implied warranty of merchantability.  When the evidence is viewed in a light most favorable to the Stroklunds, it is clear that there are numerous disputed issues of material fact

which preclude summary judgment.  Finally, the Court finds, as a matter of law, that the Stroklunds have failed to establish a genuine issue of material fact as to the claim of breach of implied warranty of fitness for a particular purpose.

For the reasons set forth above, the defendant Thompson/Center Arms' Motion for Summary Judgment (Docket No. 100) is **DENIED** in part.

**IT IS SO ORDERED.**

Dated this 21st day of November, 2007.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

20