**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Clinton "Pete" Stroklund and Rebecca "Becky" Stroklund, ) ) | **ORDER DENYING DEFENDANT BLACKPOWDER SHOOTING SPORTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, IN PART** |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| Thompson/Center Arms Company, Inc., Blackpowder Shooting Sports, Inc., and Clean Shot Technologies, Inc., ) ) ) ) | Case No. 4:06-cv-08 |
| Defendants. ) | |

_____

Before the Court is defendant Blackpowder Shooting Sports, Inc.'s Motion for Partial Summary Judgment, filed on June 15, 2007. The plaintiffs filed a response in opposition on July 20, 2007, and Blackpowder Shooting Sports filed a reply brief on July 26, 2007. For the following reasons, the Defendant's motion is denied in part and granted in part.

**I.    BACKGROUND OF THE CASE**

This dispute arises out of an explosion of a muzzleloader rifle on December 4, 2004. The explosion caused injuries to the left hand of the plaintiff, Clinton "Pete" Stroklund. Those injuries resulted in the amputation of the hand. On February 2, 2006, Pete Stroklund and Rebecca "Becky" Stroklund filed a lawsuit alleging four claims against Thompson/Center Arms Company, Inc., as well as against the manufacturers of the bullet and the gunpowder used by Pete Stroklund. The claims asserted against Blackpowder Shooting Sports, Inc., are: (1) negligence; (2) strict products liability; (3) failure to warn; and (4) breach of express and implied warranties.

The parties agree that the following facts are not in dispute. In April of 2002, Pete Stroklund received a .54 caliber muzzleloader rifle for his birthday. Although there is a dispute as to whether

the barrel of the muzzleloader rifle was manufactured by Thompson/Center Arms, it is undisputed that the rifle Pete Stroklund received was a used .54 caliber Renegade model blackpowder muzzleloader manufactured by Thompson/Center Arms and purchased at Scheels Sports in Minot, North Dakota. From the time he received the muzzleloader as a gift until the day of the accident, Pete Stroklund estimated that he had shot the rifle more than thirty (30) times without incident and that he had always used 348-grain copper plated aerotip PowerBelt brand bullets designed and manufactured by Blackpowder Shooting Sports.

On December 3, 2004, Pete Stroklund went hunting for deer and loaded the muzzleloader with powder manufactured by defendant Clean Shot Technologies, Inc., and with one 348-grain copper plated aerotip Powerbelt bullet. Stroklund shot a deer and then reloaded the muzzleloader in case he had to fire a second shot. However, he did not fire a second shot that day. Stroklund did not unload the muzzleloader that evening, but instead placed the loaded rifle in his truck where it remained overnight. On December 4, 2004, the barrel of the muzzleloader rifle exploded when Stroklund discharged the rifle into an open field to unload it.

The Stroklunds' expert witness, Charles Powell, examined and analyzed fractured components of the muzzleloader rifle that were recovered from the scene of the accident. See SSEC Engineering Report of Charles Powell, Docket No. 121-2, p. 2. Powell also analyzed and tested several .54 caliber, 348-grain, Powerbelt Aerotip bullets like the one used in Stroklund's rifle when it exploded. Id. at pp. 8-9. Powell opined that the Aerotip Powerbelt bullet used in the rifle at the time of the explosion was defective in design. Id. at 8. Powell opined that the bullet's copper plating resulted in increased barrel pressures and that the failure of Blackpowder Shooting Sports to test the barrel pressures created by the bullet and the lack of knowledge of barrel pressure issues

contributed to the defect in the bullet. Blackpowder Shooting Sports seeks summary judgment as to all claims, except the Stroklunds' claims of design defect, based on the contention that the remaining claims are without support of an expert witness. The Stroklunds concede that their claim for breach of express warranty should be dismissed, but oppose the dismissal of all other claims.

## II.     STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., 90 F.3d 1372, 1376 (8th Cir. 1996).

## III.    LEGAL DISCUSSION

### A.     NEGLIGENCE AND STRICT LIABILITY

The North Dakota Supreme Court has recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus. Oanes v. Westigo, Inc., 476 N.W.2d 248, 253 (N.D. 1991) (citing Butz v. Werner, 438 N.W.2d 509 (N.D. 1989); Mauch v. Mfrs. Sales & Servs, Inc., 345 N.W.2d 338 (N.D. 1984); Day v. General

Motors Corp., 345 N.W.2d 349 (N.D. 1984)).  Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's conduct falls below the standard of reasonable care. Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 406 (N.D. 1994).

Blackpowder Shooting Sports' sole contention for dismissal is that all of the Stroklunds' claims are not supported by expert witness testimony except for the claim of a design defect in the Powerbelt bullet.  The Court has carefully reviewed the entire record, including the numerous depositions and exhibits submitted by the parties.  When the evidence is viewed in a light most favorable to the Stroklunds, the Court finds that there are genuine issues of material fact that require submission to a jury.

The plaintiff's expert witness, Charles Powell, opined that the rifle failed because of the "combined defects in the subject rifle, defects, in the Clean Shot powder, and defects in the Power Belt bullet.  It is clear that Powell has opined that the Power Belt bullet was defective for several reasons, including its use of copper plating and the absence of testing and analysis of pressure increases when utilizing a combination of a copper plated bullet and a plastic gas check skirt.  There are genuine issues of material fact in dispute, and facts from which a jury could reasonably find for the non-moving party based on the direct and circumstantial evidence presented.

At trial, the opinions of each party's expert witnesses will be subject to vigorous cross-examination and the presentation of contrary evidence.  It is within the province of the jury, not the Court, to decide issues of credibility and to determine the weight to be accorded such evidence. The Court finds that the expert witnesses' differing opinions on the issue of negligence and causation

are sufficient at this stage to create a genuine issue of material fact and render summary judgment inappropriate as to the claims of negligence and strict liability.

### B. BREACH OF WARRANTY

In addition to the products liability and failure to warn claims, the Stroklunds have alleged breach of warranty based on express and implied warranties. See Docket No. 23, pp. 4-5. The Stroklunds concede the dismissal of the claim for breach of express warranty. Therefore the Court will limit its analysis to the Stroklunds' claims of breach of implied warranties of merchantability and fitness for a particular purpose.

#### 1. IMPLIED WARRANTY OF MERCHANTABILITY

Section 41-02-31 of the North Dakota Century Code sets forth the requirements of an implied warranty of merchantability:

> 1. Unless excluded or modified (section 41-02-33), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> 2. Goods to be merchantable must be at least such as:
>
>    a. Pass without objection in the trade under the contract description;
>
>    b. In the case of fungible goods, are of fair average quality within the description;
>
>    c. Are fit for the ordinary purposes for which such goods are used;
>
>    d. Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

> e. Are adequately contained, packaged, and labeled as the agreement may require; and
>
> f. Conform to the promises or affirmations of fact made on the container or label if any.
>
> 3. Unless excluded or modified (section 41-02-33), other implied warranties may arise from course of dealing or usage of trade.

N.D.C.C. § 41-02-31 (emphasis added).

Blackpowder Shooting Sports contends that the claim for breach of implied warranty of merchantability should be dismissed because it lacks support from an expert witness. It is clear that the Plaintiffs' engineering expert opined that the PowerBelt bullet designed and manufactured by Blackpowder Shooting Sports was defective. It is well-established under North Dakota law that an implied warranty of merchantability is deemed to have been made unless excluded or modified. Scientific Application, Inc. v. Kelkamp, 303 N.W.2d 71, 74 (N.D. 1981). In other words, the law presumes that an implied warranty of merchantability has been given, unless excluded or modified.

Blackpowder Shooting Sports does not argue that the implied warranty of merchantability was excluded or modified. Section 41-02-33 of the North Dakota Century Code provides that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous...." N.D.C.C. § 41-02-33(2). Blackpowder Shooting Sports argues that the packaging for the Powerbelt bullet would have stated, in part, that "[n]o warranty is expressed or implied." See Docket No. 96, p. 2. However, Blackpowder Shooting Sports does not contend that the disclaimer was conspicuous and has presented no evidence of a disclaimer that mentions merchantability. Even if Blackpowder Shooting Sports had presented evidence of such an exclusion or modification, "[w]hether or not such a warranty is excluded or modified is a question of fact for the jury." Id.

When the evidence is viewed in a light most favorable to the Stroklunds, the Court finds that there are genuine issues of material fact that require submission of this claim to a jury. Blackpowder Shooting Sports' motion for partial summary judgment as to the claim for breach of implied warranty of merchantability is denied.

### 2. IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

Section 41-02-32 of the North Dakota Century Code governs breach of implied warranty of fitness for a particular purpose and states as follows:

> If the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the <u>buyer is relying on the seller's skill or judgment to select or furnish suitable goods,</u> there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.D.C.C. § 41-02-32 (emphasis added).

"In an action claiming breach of an implied warranty for fitness for a particular purpose, a product may be entirely free from defect but entirely unfit for the particular purpose that the purchaser intends to make of it." <u>Coop. Power Ass'n v. Westinghouse Elec. Corp.</u>, 60 F.3d 1336, 1345 (8th Cir. 1995). The Eighth Circuit Court of Appeals has analyzed a claim for breach of warranty of fitness for a particular purpose under North Dakota law and stated that, to be successful, a plaintiff must establish that the product was not simply defective but rather defective as to a particular purpose. <u>Coop. Power Ass'n</u>, 60 F.3d at 1345. The Eighth Circuit noted the official comment contained in the Uniform Commercial Code regarding the implied warranty of fitness for a particular purpose. The official comment provides:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id. at 1345 (citing U.C.C. § 2-315 cmt. 2 (1989)).

In Cooperative Power Association, v. Westinghouse Electric Corp., 60 F.3d at 1349, the plaintiff, Cooperative Power Association (CPA), alleged a breach of implied warranty of fitness for a particular purpose as to a transformer manufactured by defendant Westinghouse. The Eighth Circuit stated as follows:

> CPA has presented no evidence to indicate that the bushing cap problem would affect one particular purpose in using the transformer any differently than any other purpose. As the record indicates, the improperly tightened bushing caps and resulting transformer failure impeded all purposes for which the transformer could be used.... [I]f one defect rendered the transformer unsuitable for all purposes, then logically one cannot also claim it constituted a defect as to a particular purpose. To do so would render an implied warranty claim of fitness for a particular purpose meaningless.

Id. at 1345.

The Stroklunds allege that the Powerbelt bullet was intended to be used as a projectile. However, the Stroklunds do not allege any other purpose for the bullet, nor do they allege that any representations were made by the seller of the bullet that were relied upon at the time of the purchase. Although the question of whether an implied warranty of fitness for a particular purpose was provided is generally a question of fact, see Scientific Application, Inc. v. Kelkamp, 303 N.W.2d 71, 74 (N.D.1981), the Court finds that a reasonable jury could not find that an implied warranty of fitness for a particular purpose was provided by Blackpowder Shooting Sports based on the undisputed facts in the record. The record is devoid of any evidence of reliance upon the

8

seller's skill or judgment in selecting the particular Powerbelt bullets. Further, even if the Stroklunds had established the requisite reliance on the seller's skill or judgment in selecting the Powerbelt bullets, they do not contend that a defect in the bullet rendered it incapable of performing for a particular purpose. In other words, the Stroklunds do not claim that the Powerbelt bullets were purchased because they were suitable for a particular and unique purpose. To the contrary, the Stroklunds allege that the defects in the bullets impeded all purposes for which the bullets could be used - being fired as a projectile. As such, the Stroklunds' claim is appropriately pled as a claim for breach of implied warranty of merchantability rather than fitness for a particular purpose. The Court finds, as a matter of law, that the Plaintiffs have failed to establish a genuine issue of material fact as to the claim of breach of implied warranty of fitness for a particular purpose.

## IV. CONCLUSION

The Court finds that the Stroklunds have presented sufficient evidence at this stage that creates genuine issues of material fact with regard to the claims of negligence, strict liability, and breach of implied warranty of merchantability. When the evidence is viewed in a light most favorable to the Stroklunds, it is clear that there are numerous disputed issues of material fact which preclude summary judgment as to these claims. The Court further finds, as a matter of law, that the Stroklunds have failed to establish genuine issues of material fact as to the claims of breach of implied warranty of fitness for a particular purpose and breach of express warranty. Those claims are dismissed as a matter of law.

For the reasons set forth above, the defendant Blackpowder Shooting Sports' Motion for Partial Summary Judgment (Docket No. 96) is **DENIED** in part as to the claims of negligence, strict

liability, and implied warranty of merchantability, and **GRANTED** in part as to the claims of express warranty and the implied warranty of fitness for a particular purpose.

   **IT IS SO ORDERED.**

   Dated this 11th day of December, 2007.

                              */s/ Daniel L. Hovland*
                              Daniel L. Hovland, Chief Judge
                              United States District Court